Raymond P. Boucher, State Bar No. 115364
   *ray@boucher.la*
Shehnaz M. Bhujwala, State Bar No. 223484
   *bhujwala@boucher.la*
Maria L. Weitz, State Bar No. 268100
   *weitz@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
Fax:   (818) 340-5401

Sahag Majarian II, SBN 146621
   *sahagii@aol.com*
LAW OFFICES OF SAHAG MAJARIAN II
18250 Ventura Boulevard
Tarzana, California 91356
Tel:  (818) 609-0807
Fax: (818) 609-0892

*Attorneys for Plaintiff Victoria*
*Shahrashian and All Others Similarly*
*Situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VICTORIA SHAHRASHIAN, Individually and on behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WAL-MART STORES, INC., a Delaware Corporation; WALGREEN CO., an Illinois Corporation; TARGET CORPORATION, a Minnesota Corporation; GNC HOLDINGS, INC., a Delaware Corporation; and DOES 1-10, Inclusive, <br><br> Defendants. | Case No. 2:15-cv-00978 <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES: <br><br> (1) CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200 *ET SEQ.*) <br> (2) CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*) <br> (3) CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*) <br> (4) NEGLIGENT MISREPRESENTATION <br><br> REQUEST FOR JURY TRIAL |

Plaintiff Victoria Shahrashian, individually and on behalf of all others similarly situated ("Plaintiff"), hereby alleges and complains the following facts and counts against defendants Wal-Mart Stores, Inc., Walgreen Co., Target Corporation, GNC Holdings, Inc., and Does 1 through 10, inclusive, and requests a trial by jury of all issues and causes of action so triable.

## INTRODUCTION

1.     This complaint challenges the corporate policies and practices of defendants Wal-Mart Stores, Inc., Walgreen Co., GNC Holdings, Inc., Target Corporation, and Does 1 through 10, inclusive ("Defendants"), who falsely, unlawfully, unfairly, and deceptively manufacture, market, distribute and/or sell to consumers their herbal dietary supplement products that do not contain the primary herbal supplement identified on the product labeling or only contain trace amounts thereof, and instead contain other ingredients not identified on the labeling. Defendants' policies and practices pose serious risks to public health and safety and violate the rights of consumers under state consumer protection statutes and common law. Defendants must be held accountable for their violations of law and stopped from causing further harm to consumers.

2.     Plaintiff brings this complaint on behalf of herself and the classes defined herein, whose rights Defendants violated and continue to violate and whose health and safety Defendants have placed at risk, between February 2, 2011, and the present (the "Class Period").

## PARTIES

3.     Plaintiff Victoria Shahrashian is, and at all material times, has been, a California citizen residing in Pasadena, Los Angeles County, California. Plaintiff purchased and/or caused to be purchased from Defendants a herbal dietary supplement product labeled as "Echinacea" for her personal use on several occasions, including purchase and use in or about November 2014 of a 100-capsule bottle labeled "Echinacea" that was manufactured, marketed, distributed and/or sold

1    by Wal-Mart Stores, Inc. under its private-label "Spring Valley" store brand (Lot #

2    214164762) from Wal-Mart Stores, Inc.'s store located at 1600 Mountain Avenue,

3    Duarte, California 91010. Prior to purchase and use of Defendants' products,

4    Plaintiff was exposed to and saw Defendants' representations regarding the product

5    ingredients by reading the product labeling. Plaintiff purchased and used these

6    products in reliance on these representations, believing that the products contained

7    Echinacea or predominant amounts thereof, and did not contain other ingredients not

8    identified on the label. Plaintiff suffered harm and incurred damages as a direct and

9    proximate result of Defendants' conduct alleged herein.

10          4.      Defendant Wal-Mart Stores, Inc. is, and at all material times has been,

11   a corporation organized and existing under the laws of Delaware, with a principal

12   place of business located at 702 S.W. 8th Street, Bentonville, Arkansas 72716, and

13   stores throughout the country, including a store located at 1600 Mountain Avenue,

14   Duarte, California 91010. Wal-Mart Stores, Inc. manufactures, markets, distributes

15   and/or sells a "private-label" store brand of dietary supplements under the name

16   "Spring Valley," including but not limited to a dietary supplement product labeled

17   "Echinacea." Wal-Mart Stores, Inc. is operating and conducting business under the

18   laws of California and regularly conducts business throughout the Central District of

19   California, including Los Angeles County, California.

20          5.      Defendant Walgreen Co. is, and at all material times has been, a

21   corporation organized and existing under the laws of Illinois, with a principal place

22   of business located at 108 Wilmot Road, Deerfield, Illinois 60015, and stores

23   throughout the country, including numerous stores within this District and Division.

24   Walgreen Co. manufactures, markets, distributes and/or sells a "private-label" store

25   brand of dietary supplements under the name "Finest Nutrition." Walgreen Co. is

26   operating and conducting business under the laws of California and regularly

27   conducts business throughout the Central District of California, including Los

28   Angeles County, California.

6.     Defendant Target Corporation is, and at all material times has been, a corporation organized and existing under the laws of Minnesota, with a principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403, and stores throughout the country, including numerous stores within this District and Division. Target Corporation manufactures, markets, distributes and/or sells a "private-label" store brand of dietary supplements under the name "Up & Up." Target Corporation is operating and conducting business under the laws of California and regularly conducts business throughout the Central District of California, including Los Angeles County, California.

7.     Defendant GNC Holdings, Inc. is, and at all material times has been, a Delaware corporation organized and existing under the laws of Pennsylvania, with a principal place of business located at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222, and stores throughout the country, including numerous stores within this District and Division. GNC Holdings, Inc. manufactures, markets, distributes and/or sells a "private-label" store brand of dietary supplements under the name "Herbal Plus." GNC Holdings, Inc. is operating and conducting business under the laws of California and regularly conducts business throughout the Central District of California, including Los Angeles County, California.

8.     The Defendants sued by the fictitious names DOES 1 through 10 are persons or entities whose true names and identities are currently unknown to Plaintiff. Plaintiff will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when they are ascertained. Each of the fictitiously named Defendants is responsible for the conduct alleged in this Complaint. Through their conduct, the fictitiously named Defendants actually and proximately caused the damages of Plaintiff and the Class.

9.     In this Complaint, Defendants Wal-Mart Stores, Inc., Walgreen Co., GNC Holdings, Inc., Target Corporation, and Does 1 through 10, inclusive, are sometimes referred to individually as "Defendant" or by name, and are sometimes

1    referred to collectively as "Defendants," or "the Defendants."

2        10.    At all times mentioned herein, each Defendant was acting as the agent

3    and/or employee of each of the remaining Defendants and was at all times acting

4    within the purpose and scope of such agency and employment. In doing the acts

5    alleged herein, each Defendant, and its officers, directors, members, owners,

6    principals, or managing agents (where the defendant is a corporation, limited

7    liability company, or other form of business entity) authorized and/or ratified the

8    conduct of each other Defendant and/or of his/her/its employees.

9                        **JURISDICTION AND VENUE**

10       11.    This Court has original jurisdiction over this action under the Class

11   Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which (i)

12   the proposed class and/or subclass consists of more than 100 members; (ii) at least

13   some members of the proposed class and/or subclass are citizens of a state different

14   from at least one of the defendants; and (iii) the matter in controversy exceeds

15   $5,000,000, exclusive of interest and costs.

16       12.    Venue is proper in the Central District of California, Western Division,

17   pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events that give

18   rise to the claims herein occurred in this District. In particular, Plaintiff's purchase

19   and use of Defendants' supplement products took place within this District and

20   Division. Venue is also proper because Defendants transact substantial business in

21   this District and Division.

22                        **FACTUAL BACKGROUND**

23       13.    The Dietary Supplement Health and Education Act of 1994

24   ("DSHEA") defines a dietary supplement as a product other than tobacco intended

25   to supplement the diet that bears or contains one or more of the following

26   ingredients: a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary

27   supplement used by man to supplement the diet by increasing the total dietary

28   intake; or a concentrate, metabolite, constituent, extract, or some combination of the

above ingredients. Dietary supplements are intended for ingestion in pill, capsule, tablet, powder or liquid form, are not represented for use as a conventional food or as the sole item of a meal or diet, and are labeled as a "dietary supplement."

14.     The United States Food and Drug Administration ("FDA") does not regulate the manufacture, marketing or distribution of dietary supplements in the same manner as prescription drugs. Indeed, the DSHEA defined dietary supplements as a category of food subject to different regulations than prescription drugs. Thus, manufacturers and distributors of dietary supplements are not required to obtain FDA approval prior to manufacture or distribution, nor does the FDA monitor labeling to ensure the information listed on product labeling is truthful and not misleading. In essence, the dietary supplement industry has been left to regulate itself.

15.     The risks posed to the health and safety of the public from the lack of regulation of dietary supplements are serious. Consumers may suffer adverse reactions from dietary supplements that are adulterated or that interact adversely with prescribed drugs. Other than the assurances of manufacturers and distributors, consumers have no reasonable way of knowing whether the dietary supplement they purchase or use contains the ingredients listed on the label, and does not contain any ingredients not listed on the label.

16.     Plaintiff is informed, believes, and thereupon alleges that each of the Defendants have been manufacturing, distributing, marketing and selling "private-label" store brand herbal supplement products, since at least the beginning of the Class Period, which failed to contain the primary supplement at all or contained only trace amounts thereof, and contained filler ingredients not identified on the product labels.

17.     Despite Defendants' longstanding policies and practices, Plaintiff and Class Members were not aware and, indeed, could not have reasonably discovered Defendants' wrongdoing until on or after February 2, 2015, when New York's

Office of the Attorney General (NY AG) issued letters to each of the Defendants disclosing the results of ongoing investigations into certain of Defendants' products and the validity of certain of Defendants' representations and advertising, and news reports broke of the NY AG's investigation results.

18.     The NY AG's February 2, 2015 letter to Wal-Mart Stores, Inc. advised that its investigation of six popular "Spring Valley" store brand dietary supplement products, Ginko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto, which were purchased at three different stores in New York state and then genetically tested using DNA barcoding technology five times per sample, revealed that all of the tested dietary supplement products were either unrecognizable or contained substances other than what they were claimed to be and therefore constituted contaminated or substituted products. Indeed, only four percent of tests yielded DNA matching the product label, 40% tested for botanical material other than what was identified on the label, and 56% yielded no plant DNA at all. A chart identifying, among other things, the product tested, its lot number, and the address where the product was purchased, was attached to the NY AG's letter. The lot number on the label of the Spring Valley "Echinacea" product Plaintiff purchased, caused to be purchased, and/or used in or about November 2014, matches the lot number for one of the Echinacea-labeled products listed on the chart. According to the NY AG's report, the Echinacea-labeled products tested did not identify any plant genetic material of any sort.

19.     The NY AG's February 2, 2015 letter to Walgreen Co. similarly advised that its investigation of six popular "Finest Nutrition" store brand dietary supplement products, Ginko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto, which were purchased at three different stores in New York state and then genetically tested using DNA barcoding technology five times per sample, revealed that five of the six tested dietary supplement products were either unrecognizable or contained substances other than what they were claimed to be and

therefore constituted contaminated or substituted products. Only eighteen percent of tests yielded DNA matching the product label; 45% tested for botanical material other than what was on the label, and 37% yielded no plant material at all. A chart identifying, among other things, the product tested, its lot number, and the address where the product was purchased, was attached to the NY AG's letter.

20.     The NY AG's February 2, 2015 letter to Target Corporation similarly advised that its investigation of six popular "Up & Up" store brand dietary supplement products, Ginko Biloba, St. John's Wort, Valerian Root, Garlic, Echinacea, and Saw Palmetto, which were purchased at three different stores in New York state and then genetically tested using DNA barcoding technology five times per sample, revealed that three of the six tested dietary supplement products were either unrecognizable or contained substances other than what they were claimed to be and therefore constituted contaminated or substituted products. Forty-one percent of tests yielded DNA matching the product label; 21% tested for botanical material other than what was on the label, and 38% yielded no plant material at all. A chart identifying, among other things, the product tested, its lot number, and the address where the product was purchased, was attached to the NY AG's letter.

21.     The NY AG's February 2, 2015 letter to GNC Holdings, Inc. similarly advised that its investigation of six popular "Herbal Plus" store brand dietary supplement products, Ginko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto, which were purchased at four different stores in New York state and then genetically tested using DNA barcoding technology five times per sample, revealed that five of the six tested dietary supplement products were either unrecognizable or contained substances other than what they were claimed to be and therefore constituted contaminated or substituted products. Twenty-two percent of tests yielded DNA matching the product label; 33% tested for botanical material other than what was on the label, and 45% yielded no plant material at all. A chart identifying, among other things, the product tested, its lot number, and the address

1   where the product was purchased, was attached to the NY AG's letter.

2       22.    All of the allegations contained in this Complaint are based upon

3   information and belief, except for those pertaining to Plaintiff and her counsel.

4   Plaintiff's information and belief are based upon, among other things, the

5   investigation that Plaintiff and her counsel have conducted to date. The allegations

6   in this Complaint are substantiated by evidentiary support, or are likely to be

7   substantiated by evidentiary support upon further investigation and discovery.

8                   **CLASS ACTION ALLEGATIONS**

9       23.    Plaintiff brings this action, on behalf of herself and all others similarly

10  situated, as a class action pursuant to Federal Rule of Civil Procedure 23. This

11  action may be brought and properly maintained as a class action because Plaintiff

12  satisfies the numerosity, adequacy, typicality, and commonality pre-requisites for

13  suing as a representative party pursuant to Rule 23.

14      24.    **Class Definition**. The proposed, nationwide plaintiff Class that

15  Plaintiff seeks to represent is preliminarily composed of and defined as follows:

16      All persons within the United States who purchased and/or used Wal-
        Mart's "Spring Valley" brand, Walgreen's "Finest Nutrition" brand,
17      Target's "Up & Up" brand, or GNC's "Herbal Plus" brand herbal
        dietary supplements during the period February 2, 2011, through the
18      present ("Class").

19  Plaintiff also seeks to represent a proposed California plaintiff subclass that is

20  preliminarily composed of and defined as follows:

21      All persons within California who purchased and/or used Wal-Mart's
        "Spring Valley" brand, Walgreen's "Finest Nutrition" brand, Target's
22      "Up & Up" brand, or GNC's "Herbal Plus" brand herbal dietary
        supplements during the period February 2, 2011 through the present
23      ("California Subclass").

24

25      25.    Excluded from the Class and California Subclass (collectively, the

26  "Class") are Defendants named herein; officers and directors of Defendants;

27  members of the immediate family of any Defendant; any judges or justices to whom

28  this action is assigned and their immediate families; and the legal representatives,

1   heirs, successors, or assigns of any such excluded party.

2       26.   Plaintiff reserves the right to amend or otherwise alter the Class

3   definitions presented to the Court at the appropriate time, or propose or eliminate

4   sub-classes, in response to facts learned through discovery, legal arguments

5   advanced by Defendants, or otherwise.

6       27.   **Numerosity and Ascertainability**. The members of the Class are so

7   numerous that joinder of all members is impracticable. Although the precise number

8   of Class members is unknown to Plaintiff at this time, Plaintiff estimates that there

9   are more than 100 and it is likely that there are thousands of putative Class

10  members. Moreover, the precise number of Class members and their addresses may

11  be obtained from a review of Defendants' own records and/or records in the control

12  of Defendants. This information may then be used to contact potential Class

13  members.

14      28.   **Typicality**. Plaintiff is a Class member. Her claims are typical of the

15  claims of other members of the Class and California Subclass that she seeks to

16  represent. Plaintiff alleges that the herbal dietary supplement product purchased

17  from Wal-Mart Stores, Inc. in or about November 2014, among other products she

18  purchased from Defendants during the Class Period, did not contain Echinacea or a

19  predominant amount thereof, and contained other ingredients not identified on the

20  product's label, in violation of statutory consumer protection laws and common law.

21  The harm that Plaintiff and all other Class members suffered arose from, and was

22  caused by, the same conduct by Defendants. Defendants have acted, or refused to

23  act, on grounds generally applicable to the Class, thereby making injunctive relief

24  and damages appropriate with respect to the Class as a whole.

25      29.   **Adequacy of Representation**. Plaintiff will fairly and adequately

26  represent and protect the interests of the Class members. Plaintiff has retained

27  counsel that is competent and experienced in consumer class action litigation to

28  ensure such protection. Plaintiff and her counsel intend to prosecute this action

vigorously for the benefit of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has no interests that are in conflict with those of the Class.

30. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for several reasons. First, the damages suffered by each Class member are too small to warrant individual pursuit and thus a class action is the only viable method to obtain damages and other relief from Defendants. Second, class treatment would be superior to adjudicating individual cases due to the much greater expense and burden that individual litigation would impose upon the courts. Third, if Class members sought relief through individual actions, inconsistent or varying adjudications in their individual cases could establish incompatible standards of conduct for the Defendants.

31. **Predominance of Common Questions of Law and Fact**. There exists a well-defined community of interest in the questions of law and fact involved in this case against Defendants, and in obtaining appropriate relief for Defendants' violations of consumer rights under statutes and common law. The following questions of law and fact common to the Class predominate over any individualized issues and the answers to these questions are apt to drive the resolution of the litigation:

      a. Whether, during the Class Period, Defendants manufactured, marketed, distributed and/or sold herbal dietary supplements that did not contain the herbal ingredient identified on the product label;

      b. Whether, during the Class Period, Defendants manufactured, marketed, distributed and/or sold herbal dietary supplements that contained ingredients not identified on the product label;

      c. Whether Defendants' actions as alleged herein violated California's Unfair Competition Act;

d.    Whether Defendants' actions as alleged herein violated California's False Advertising Act;

e.    Whether Defendants' actions as alleged herein violated California's Consumers Legal Remedies Act;

f.    Whether Defendants' actions as alleged herein constitute negligent misrepresentation under common law;

g.    Whether Defendants' actions caused them to be unjustly enriched;

h.    Whether Plaintiff and Class members are entitled to recover damages as a result of Defendants' violations of their rights under statutory and common laws as alleged herein; and

i.    Whether Plaintiff and Class members are entitled to injunctive relief to enjoin or restrain the Defendants from committing further violations of consumer rights under statutory and common law.

32.    The core factual and legal issues are the same for all Class members: (1) whether the Class member purchased and/or used one or more of Defendants' store brand herbal dietary supplements during the Class Period; (2) whether the product purchased and/or used failed to contain the herbal ingredient identified on the product or contained other ingredients not listed on the label; (3) the harm Plaintiff and Class members suffered thereby; and (4) the measure of damages.

33.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

34.    The nature of notice to the proposed Class is contemplated to be by direct mail and/or email upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, publication in major newspapers and/or on the internet.

35.     The delayed discovery doctrine applies to toll the claims of Class members. Under the delayed discovery doctrine, the time for bringing these claims does not begin to run until a plaintiff discovers or should have discovered the injury. Thus, the limitations period for claims of Class members does not begin to run until at least February 2, 2015, the date the NY AG issued its "cease and desist" letters to Defendants and news reports of the NY AG's investigation started to circulate. In addition to the tolling afforded the Class by the delayed discovery rule, the time period is also tolled by the filing of this putative class action.

## COUNT ONE

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

## (Cal. Bus. & Prof. Code § 17200 *et seq.*)

36.     Plaintiff realleges and incorporates herein by this reference all of the foregoing paragraphs, above, as though set forth in full herein.

37.     Plaintiff brings this claim on behalf of the California Subclass only.

38.     California Business and Professions Code section 17200 *et seq*. ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practices."

39.     Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices in violation of consumer rights under the UCL, as alleged herein. During the Class Period, Defendants misrepresented in its labeling of the store-brand dietary supplement products to Plaintiff and Class members that the products contained the ingredients claimed. These representations were false and misleading because the products did not contain the herbal ingredients identified on product labeling, and contained other ingredients not listed on the labeling.

40.     Defendants have violated the fraudulent prong of California Business and Professions Code section 17200 *et seq*. because Defendants' misrepresentations and omissions regarding the ingredients contained in their store-brand dietary supplement products were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

41.     Defendants have violated the unfair prong of California Business and Professions Code section 17200 *et seq.* because Defendants' policies and practices as set forth above offend established public policy and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct as alleged herein also impaired competition within the dietary supplement industry. Defendants' conduct also prevented Plaintiff from making fully informed decisions about whether to purchase and/or use dietary supplement products from other manufacturers and distributors, purchase and/or use less expensive product, or purchase and/or use the products at all.

42.     Defendants have violated the unlawful prong of California Business and Professions Code section 17200 *et seq.* because Defendants' policies and practices described above violate California laws, including but not limited to:   (1) California's False Advertising Law; (2) California's Consumers Legal Remedies Act; and (3) California's Sherman Food, Drug and Cosmetic Law, Health and Safety Code section 109875 *et seq.*, and its prohibitions against misbranding and false advertising of dietary supplement products (Cal. Health & Safety Code §§ 110760 and 110398). Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

43.     Plaintiff has standing under the UCL because she suffered injury in fact, including losing money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices.

44.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized conduct that is still perpetuated and repeated, both in California and nationwide.

45.     Plaintiff requests this Court enter such orders or judgments to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to

restore to Plaintiff and members of the Class any money Defendants acquired by unfair competition, as provided in California Business and Professions Code section 17203, and for such other relief set forth below.

## COUNT TWO

## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500 *et seq.*)

46. Plaintiff realleges and incorporates herein by this reference all of the foregoing paragraphs, above, as though set forth in full herein.

47. California Business and Professions Code section 17500 states: "It is unlawful for any ... corporation ... with intent directly or indirectly to dispose of real or personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ...from this state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

48. Defendants caused to be made or disseminated through California and the United States, through product labeling and advertising, statements and omissions that were untrue or misleading with respect to the ingredients contained in the Defendants' store-brand dietary supplement products, and which were known, or which by exercising reasonable care should have been known, to Defendants to be untrue and misleading to Plaintiff and Class members.

49. Defendants have violated California Business and Professions Code section 17500 because the misrepresentations and omissions made by Defendants on product labeling of their store-brand dietary supplements regarding the ingredients contained in the dietary supplement products were material and likely to deceive a reasonable consumer.

50.     Plaintiff has standing because, as set forth above, she suffered injury in fact, including losing money or property, as a result of Defendants' false advertising.

51.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized conduct that is still perpetuated and repeated, both in California and nationwide.

52.     Plaintiff requests this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their false advertising and to restore to Plaintiff and members of the Class any monies Defendants acquired by such acts, and for such other relief set forth below.

## COUNT THREE

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (Cal. Civ. Code § 1750 *et seq.*)

53.     Plaintiff realleges and incorporates herein by this reference all of the foregoing paragraphs, above, as though set forth in full herein.

54.     Plaintiff brings this count against all Defendants on behalf of the nationwide Class defined herein because similar statutes that are identical in material respects are in effect in states that are a part of the alleged nationwide Class. In the alternative, Plaintiff brings this count against all Defendants on behalf of the California Subclass only.

55.     Defendants are "persons" under California Civil Code section 1761(c).

56.     Plaintiff and Class members are "consumers," as defined by California Civil Code section 1761(d), who purchased dietary supplements manufactured, marketed, distributed and/or sold by Defendants, which are considered "goods" within the meaning of the Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750 *et seq*.

57.     Defendants engaged in both unfair and deceptive acts or practices that

1  violated the CLRA as described in this Complaint.

2      58.     Defendants engaged in deceptive business practices prohibited by the

3  CLRA by: (1) representing their store-brand dietary supplement products have

4  characteristics, uses, benefits, and qualities which they do not have; (2) representing

5  these products are of a particular standard, quality, and grade when they are not; and

6  (3) advertising these products through product labeling with the intent not to sell

7  them as advertised.

8      59.     Defendants violated the CLRA by misrepresenting material facts on the

9  product labeling, as described above, when the representations were false and

10 misleading.

11     60.     A reasonable consumer would not have purchased or paid as much as

12 for the products had Defendants disclosed the products did not contain the herbal

13 ingredient identified on the product labeling or contained only trace amounts

14 thereof, and contained other ingredients not listed on the label, because such

15 information is material to a reasonable consumer.

16     61.     Because of its violations of the CLRA detailed above, Defendants have

17 caused and continue to cause actual damage to Plaintiff and the Class, and, if not

18 stopped, Defendants will continue to cause such harm. Had Plaintiff and absent

19 Class members known of the issues with Defendants' dietary supplement products,

20 they would not have purchased or used these products and/or paid as much for them.

21 Indeed, Plaintiff relied on Defendants' misrepresentations and would not have

22 purchased or used Defendants' products had she known of these issues. As a direct

23 and proximate result of Defendants' CLRA violations, Plaintiff and Class members

24 have suffered damages, including losing money or property, as a result of

25 Defendants' unfair, unlawful and/or deceptive practices.

26     62.     On February 10, 2015, Plaintiffs' counsel sent a letter to Defendants by

27 certified mail, return receipt requested, that contained notice of Defendants'

28 violations of the CLRA and a demand for relief from Defendants. A true and correct

1    copy of the letter, without enclosure, is attached to this Complaint as Exhibit A, and

2    incorporated herein by reference. If Defendants fail to rectify or agree to rectify the

3    problems associated with the actions detailed above and give notice to all affected

4    consumers within 30 days of the date of written notice pursuant to California Civil

5    Code section 1782, Plaintiff will amend this Complaint to add claims for actual,

6    punitive, and statutory damages, as appropriate.

7        63.    Plaintiff and Class members also request this Court enter such orders or

8    judgments as may be necessary to restore to any person any money acquired with

9    such unfair business practices, and for such other relief, including attorneys' fees

10   and costs, as provided in Civil Code section 1780 and the Prayer for Relief.

11       64.    Plaintiff includes an affidavit with this Complaint that shows venue in

12   this District is proper, to the extent such an affidavit is required by California Civil

13   Code section 1780(d).

## FOURTH COUNT

## NEGLIGENT MISREPRESENTATION

16       65.    Plaintiff realleges and incorporates herein by this reference all of the

17   foregoing paragraphs, above, as though set forth in full herein.

18       66.    Plaintiff brings this count against all Defendants on behalf of the

19   nationwide Class defined herein because similar common laws that are identical in

20   material respects are in effect in states that are a part of the alleged nationwide

21   Class. In the alternative, Plaintiff brings this count against all Defendants on behalf

22   of the California Subclass only

23       67.    Defendants made representations to Plaintiff and Class members

24   concerning the ingredients on Defendants' store-brand dietary supplement products

25   that were not true.

26       68.    Defendants had no reasonable grounds for believing these

27   representations were true when they made them, yet they intended that Plaintiff and

28   Class members rely on these representations.

69.     Plaintiff and Class members reasonably relied on Defendants'
representations, and were harmed as a result.

70.     These activities by Defendants, as afore-described in this Complaint,
legally caused actual damages to Plaintiff and Class members. As a result of such
injuries, Plaintiff and Class members have suffered economic damages according to
proof at trial.

71.     Based on the foregoing, Plaintiff and Class members suffered economic
damages as a result of the Defendants' conduct. Plaintiff and Class members are
entitled to, and do herein pray for, their damages, according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly
situated, respectfully requests and prays that the Court determine that this action
may be maintained as a class action and further prays that the Court enter judgment
in her favor and against the Defendants, as follows:

1.     Certify the Class and California Subclass in a manner consistent with
discovery and other proceedings and developments relating to Class certification;

2.     Appoint Plaintiff as Class Representative;

3.     Appoint undersigned counsel as Class Counsel;

4.     Award all actual, general, special, incidental, statutory, punitive, and
consequential damages to which Plaintiff and the Class are entitled, in an amount to
be determined at trial or upon judgment;

5.     Award pre-judgment and post-judgment interest on such monetary
relief;

6.     Award appropriate injunctive and/or declaratory relief, including
requiring Defendants to conduct an appropriate recall of affected products still on
the market;

7.     Order Defendants to pay for the cost of notice and claims
administration;

8.    Award reasonable attorneys' fees and costs;

9.    Award the class representatives an appropriate incentive award; and

10.   Grant such further relief that this Court deems appropriate.

DATED: February 10, 2015            Respectfully submitted,

BOUCHER LLP

By: _____

RAYMOND P. BOUCHER
SHEHNAZ M. BHUJWALA
MARIA L. WEITZ

LAW OFFICES OF SAHAG MAJARIAN II
SAHAG MAJARIAN II

*Attorneys for Plaintiff*
*Victoria Shahrashian and the Putative*
*Class*

**REQUEST FOR JURY TRIAL**

Plaintiff, individually and on behalf of a class of all others similarly situated ("Plaintiff"), by and through her undersigned counsel of record, hereby respectfully requests a jury trial on all issues and counts so triable.

DATED:  February 10, 2015                    Respectfully submitted,

BOUCHER LLP

By: _____
    RAYMOND P. BOUCHER
    SHEHNAZ M. BHUJWALA
    MARIA L. WEITZ

LAW OFFICES OF SAHAG MAJARIAN II
    SAHAG MAJARIAN II

*Attorneys for Plaintiff*
*Victoria Shahrashian and the Putative*
*Class*